**Johnnie Will JOHNSON,
Plaintiff-Appellant,**

v.

**ARTIM TRANSPORTATION SYSTEM, INC., and Teamsters Union Local 142, Defendants-Appellees.**

**No. 86–1133.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1987.

Decided July 29, 1987.

Michael F. Lefkow, Chicago, Ill., for plaintiff-appellant.

Barry M. Bennett, Asher, Pavalon, Gittler and Greenfield, Chicago, Ill., for defendants-appellees.

Before WOOD, COFFEY, and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Plaintiff Johnnie Will Johnson was fired from his position as a truck driver by Artim Transportation System, Inc. ("Artim") after Artim employees discovered him sleeping and allegedly drunk near the Artim dump truck he had been driving, which was still running and blocking traffic. Johnson sued Artim and Teamsters Union Local 142 ("Local 142") for violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e–5 (1982) (Title VII), alleging that he was terminated and the union refused to comply with grievance procedures because he is black. Johnson subsequently amended his complaint to include a hybrid section 301 (of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1982))/breach of the duty of fair representation claim against Artim and Local 142. The district court dismissed the section 301/fair representation claim as barred by the statute of limitations, severed *sua sponte* Johnson's claim against Artim because Artim had filed a petition for bankruptcy, and, after a one-day bench trial, granted judgment for Local 142 on the Title VII claim, concluding that Johnson had not established a prima facie case of racial discrimination. Johnson appeals the dismissal of his hybrid section 301/fair representation claim and the grant of summary judgment for Local 142 on the Title VII claim. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff Johnnie Will Johnson, a black male, worked as a truck driver for Artim Transportation System, Inc., and was a member of Teamsters Union Local 142, the union that represented Artim employees. During the night of June 13, 1975, and until 4:30 a.m. of the next morning, Johnson was drinking beer and gambling at a farm outside of Gary, Indiana. Without sleeping, he went home, changed clothes, and reported for work at Artim at 6:00 a.m. After making a delivery, his return to Artim was delayed at approximately 9:00 a.m. by a long train that had stopped and blocked the road. Johnson got out of the cab of the truck to see why the train was standing still, could not see the end of the train, and sat down in a nearby doorway to shade himself from the sun because it was too hot in the cab.

Artim shortly thereafter received a call that one of its trucks was stopped and blocking traffic. Two Artim employees, John Harkema and Tony Ballas, arrived on the scene and discovered the Artim tractor and trailer still running and partially off the street, at an angle blocking traffic.

Employees from a nearby company were flagging traffic around the truck. Harkema and Ballas found Johnson asleep across the street and awakened him. Harkema smelled alcohol on Johnson's breath and accused him of being drunk, which Johnson denied. Harkema drove Johnson back to Artim and at the Artim terminal Johnson was informed that he was terminated for being drunk.

At approximately 2:00 or 2:30 p.m. that day, Johnson had a blood alcohol test taken. The results showed that as of the time he took the test, his blood alcohol level was .06 percent. The same day, Harkema called Dominic Damato, an Artim employee who acted as one of Local 142's business agents, and told Damato Johnson had been discharged for being intoxicated while driving his truck. Damato went to Artim's terminal and was told the company's side of the events.

The following Tuesday, June 17, Johnson spoke with Damato, who was accompanied by Ernest Porter and another man, who were both Local 142 officials. Johnson said that the day of the incident he had had a kink in his back and had left the truck and fallen asleep in a doorway. In response to Damato's questioning, Johnson denied having been drunk when he was found asleep and said he had taken a blood alcohol test. Damato claims Johnson then said the test results showed alcohol in his system; Johnson says he said he had not yet received the test results.

On June 18, Johnson met with Damato, Porter, and other Local 142 agents, and Jack McMahon, the terminal manager. Damato told Johnson that he was fired. Johnson then asked Damato if he would file a grievance in Johnson's behalf. Damato refused. The next day, Damato refused a second time to file a grievance.

The following day, June 19, Johnson filed discrimination charges against Artim and Local 142 with the Equal Employment Opportunity Commission (EEOC) and the Gary Human Rights Division. The charges were summarily dismissed for lack of cause, but the EEOC did issue Johnson a right-to-sue notice on September 15, 1977.

Johnson filed a *pro se* complaint with the district court on November 17, 1977, alleging that Artim and Local 142 had discriminated against him because of his race, in violation of Title VII, 42 U.S.C. § 2000e–5. The district judge denied Johnson a court-appointed attorney, but allowed Johnson to proceed *in forma pauperis.*

On September 15, 1978, Johnson moved to amend his complaint to add a hybrid claim against Artim and Local 142 for breach of the collective bargaining agreement, in violation of section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, and for breach of the duty of fair representation.[1] The court granted Johnson leave to amend the complaint on October 3, 1978.

On May 6, 1982, the court appointed counsel for Johnson. On June 7, 1983, the court granted summary judgment for Artim and Local 142 on the hybrid section 301/fair representation claim on the ground that it was untimely filed. The court denied the defendants summary judgment, however, on the Title VII claim.

Artim filed notice on June 1, 1984, that it was in Chapter 11 bankruptcy proceedings. The court severed Johnson's claim against Artim on December 13, 1984, pursuant to

Federal Rule of Civil Procedure 42(b),[2] and directed that the Title VII claim against Local 142 go forward for trial. After a one-day bench trial the court granted judgment for Local 142 under Federal Rule of Civil Procedure 41(b) on December 13, 1985, finding that Johnson had failed to establish a prima facie case of racial discrimination as required under 42 U.S.C. § 2000e–5 because "[t]here [was] no evidence that similarly situated white employees of the defendant were treated more favorably than was the plaintiff."[3] Johnson appeals this ruling and the grant of summary judgment for defendants on the hybrid section 301/fair representation claim. Local 142 asks for attorneys' fees and costs in connection with this appeal.

## II. DISMISSAL OF TITLE VII CLAIM

Johnson argues that the district court erred in dismissing under Federal Rule of Civil Procedure 41(b)[4] his Title VII claim on the ground that Johnson had failed to establish a prima facie case against Local 142. In an appeal of a dismissal under Rule 41(b), we will affirm the district court's decision unless we determine that the court's findings under Federal Rule of Civil Procedure 52(a)[5] supporting that

---

1. A hybrid section 301/fair representation claim comprises two causes of action. One cause of action is against the employer for breach of the collective bargaining agreement, under section 301 of the LMRA, 29 U.S.C. § 185 (1982), and the other is against the union for breach of the union's duty of fair representation. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). The latter is an implied duty under the National Labor Relations Act. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). The claims are, however, "inextricably interdependent," *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), because to succeed, the employee-plaintiff must prove both claims. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976).

2. Fed.R.Civ.P. 42(b) provides in pertinent part: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue...."

3. The district judge on October 16, 1986, granted Johnson's motion for *nunc pro tunc* certification under Fed.R.Civ.P. 54(b), entering judgment for Local 142 on the district court's June 18, 1983 and December 13, 1985 order *nunc pro tunc* December 13, 1985. Jurisdiction in this court is therefore proper.

4. Rule 41(b) provides in pertinent part:
   After the plaintiff ... has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.
   Fed.R.Civ.P. 41(b).

5. Fed.R.Civ.P. 52(a) provides in relevant part:
   In all actions tried upon the facts without a jury ... the court shall find the facts specially

judgment were clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman-Standard v. Swint*, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982); *Bugg v. International Union of Allied Industrial Workers Local 507*, 674 F.2d 595, 599 (7th Cir.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); *Patterson v. General Motors Corp.*, 631 F.2d 476, 487 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The district court's determination that Johnson did not establish a prima facie case of racial discrimination rests on its finding that Johnson did not show "some indication" that Local 142 was motivated by racial animus in refusing to file a grievance. We are not left with a firm conviction that the district court committed a mistake in reaching this finding. The court applied the three-part test enunciated in *Bugg v. International Union of Allied Industrial Workers Local 507*, 674 F.2d 595, 598 n. 5 (7th Cir.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982), to analyze whether Johnson had established a claim against Local 142. Under *Bugg*, an employee/plaintiff establishes a prima facie case against a union when the plaintiff shows by a preponderance of the evidence:

(1) that the company committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the Union's actions were motivated by racial animus.

*Id.* The district court found that plaintiff Johnson had shown that Artim had breached its collective bargaining agreement with respect to Johnson and that Local 142 had breached its duty of fair representation.[6] The court also found, however, that Johnson had failed to satisfy the third prong of this test, and thus failed to establish a prima facie case because he did not show "some indication" that Local 142's actions were motivated by racial animus.

We recognize that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Nonetheless, as the district judge correctly determined, for Johnson to succeed in showing racial animus through a disparate treatment analysis, he had to show at least some evidence that the grievances of similarly situated white employees were treated differently than was his grievance. *See Donaldson v. Taylor Products Division of Tecumseh Products Co.*, 620 F.2d 155, 159 (7th Cir. 1980). The court found that Johnson had "not demonstrated that the union treated similarly situated white members in a different fashion than he was treated." In reaching this determination, the court analyzed Johnson's evidence of alleged misconduct by a total of thirteen white employees. The court recognized that Local 142 had brought grievances for eight of those white

---

and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

6. The defendants argue that the district court applied an incorrect legal standard in arriving at its determination that the union breached its duty of fair representation. We recognize that

because the second prong of the *Bugg* test refers to a union's breach of its duty of fair representation, the parties and the district court may have needlessly considered the union's breach of its duty of fair representation apart from the union's racial animus. Such an analysis is irrelevant to a Title VII race discrimination claim. Nonetheless, because we affirm the district court's decision that plaintiff's attempt to prove a prima facie case failed for other reasons, we need not decide this issue.

employees, but found that there was no basis for comparing their misconduct with that of Johnson's because those employees were not "similarly situated"—none of those instances of misconduct by eight white Artim employees had to do with being intoxicated on the job. Regarding the misconduct of the other five white employees, the district judge found that Johnson's evidence was insufficient to show racial animus because Johnson did not show that the union acted on behalf of those white employees or was even aware of their alleged acts of misconduct. As the district court noted, "[w]hile this evidence may establish racial animus on the part of Artim, it completely fails to raise an inference of discriminatory intent on the part of the Union."

The district court's finding that the five white employees were not similarly situated with Johnson was not clearly erroneous. The judge correctly determined that their situations could not be compared with that of Johnson's because their employment had not been terminated; furthermore, Johnson made no showing that Local 142 was even aware of their alleged acts of misconduct, let alone acted on behalf of the white employees. The judge could not speculate as to how Local 142 would have treated grievances of these employees and thus could not compare the treatment of those employees with the treatment of Johnson's grievance.

Johnson argues that the district court incorrectly found that the remaining eight white employees were not similarly situated with Johnson. He contends that the district judge in interpreting the phrase "similarly situated" improperly required him to show white employee misconduct essentially identical to his own followed by different treatment of white employee grievances. Instead, he argues, it was enough for him to show that the acts of misconduct were of "comparable seriousness." Johnson relies on *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), in which the Supreme Court stated that

precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell-Douglas [Corp. v. Green]*, [411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973)], an allegation that other employees involved in acts against [an employer] of *comparable seriousness* ... were nevertheless retained ... is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as ground for terminating him was merely pretextual....

*Id.* at 283 n. 11, 96 S.Ct. at 2580 n. 11 (emphasis added). Johnson maintains that the offenses of "comparable seriousness" to his offense of driving while intoxicated are listed in the Uniform Rules and Regulations compiled by Local 142 and the Indiana Truckers Association. Depending on the nature of the offense, one or more repetitions of an offense can lead to a discharge situation.

We are nonetheless unpersuaded that the district court's finding was clearly erroneous. The district court could well have been reluctant to apply these rules as indicative of comparable seriousness in this case. Johnson has not applied the Uniform Rules and Regulations to compare the seriousness of Johnson's misconduct with that of each instance of white employee misconduct. In any event, these are rules for the company to follow in disciplining an employee, and not for the union to follow in filing a grievance. Company discipline rules would be helpful in a case alleging employer discrimination if we were comparing evidence of different and more severe discipline by an employer for black employees than for white employees after similar misconduct, for example, a one-day absence from work. *See Mozee v. Jeffboat, Inc.*, 746 F.2d 365, 369–70 (7th Cir.1984).

Furthermore, company discipline rules are not conclusive indicators of comparable seriousness. Even if a plaintiff shows different treatment after violations of the same rule, he or she might not succeed in establishing a prima facie case. *See Green v. Armstrong Rubber Co.*, 612 F.2d 967 (5th Cir.), *cert. denied*, 449 U.S. 879, 101

S.Ct. 227, 66 L.Ed.2d 102 (1980). In *Green,* during a fight between the black plaintiff/employee and a white employee, the plaintiff slashed the white employee with a knife-like work tool. Both employees were found to have violated a company rule proscribing fighting, yet the plaintiff was discharged and the white employee was only suspended. The court nonetheless held that the plaintiff did not establish a prima facie case of racial discrimination, finding that the clear weight of the evidence showed the black plaintiff was treated differently from the white employee because of dissimilar conduct rather than because of racial animus. *Id.* at 968.

We agree with the reasoning of the Fifth Circuit in *Green,* and believe that the district court in this case was entitled to compare conduct rather than rule violations in its disparate treatment analysis.[7] Comparisons of identical rules violations may at times be helpful in showing a prima facie case of racial discrimination, *see Martin v. Chrysler Corp.,* 10 Fair Empl. Prac. Cas. (BNA) 329, 332 (E.D.Mich.1974) (black plaintiff showed prima facie case of racial discrimination where he established that although he and a white employee were accused of the "same infraction," he was discharged and the white employee was not); *cf. Mozee v. Jeffboat, Inc.,* 746 F.2d 365, 369-70 (7th Cir.1984) (inadequate findings under Rule 52(a) where district court failed to address, among other things, plaintiff's evidence that compared punishment for white employees and for black employees after attendance violations), but in this case, particularly where plaintiff urges us to compare violations of similar rather than identical rules, it may well be more helpful to focus on the nature of the misconduct. *See Meyer v. California and Hawaiian Sugar Co.,* 662 F.2d 637, 639-40 (9th Cir.1981); *Aquamina v. Eastern Airlines, Inc.,* 644 F.2d 506, 508 (5th Cir.1981); *Green,* 612 F.2d at 967; *Gill v. Westinghouse Electric Corp.,* 594 F.Supp. 48, 51

(N.D.Ill.1984); *cf. Barnes v. St. Catherine's Hospital,* 563 F.2d 324, 327-28 (7th Cir.1977) (in affirming trial court's findings as not clearly erroneous, this court noted that district judge permissibly considered the nature of plaintiff's misconduct in its disparate treatment analysis).

We are not left with a firm conviction that the district court made a mistake in concluding that the differences in misconduct on the part of the eight white employees and the plaintiff were so great that the treatment of grievances on their behalf could not be compared. Even applying the plaintiff's suggested test of "comparable seriousness" of misconduct, we cannot conclude that the judge was mistaken. The judge could have determined that Johnson's conduct of driving while intoxicated was much more serious and was very different from the misconduct of the white employees. Johnson, driving a fourteen-ton Mack dump truck while intoxicated, posed a grave danger to travellers. Nearly all the white employees, however, had engaged in much less serious misconduct such as involvement in traffic accidents, failing to perform an assignment, absenteeism justified by medical problems, and refusal to drive an eight-foot trailer without escort. One of the white employees had been accused of theft. Even though some might consider stealing comparably serious to driving while intoxicated although it does not involve the same danger to life and property, the employee accused of stealing in this instance asserted he was innocent. Because it was unclear whether the employee had engaged in misconduct at all, the union brought a grievance. In light of the extreme facts leading to Johnson's discharge, however, the union could not reasonably have been expected to contend that Johnson was not intoxicated. We hold that the district judge's finding that the white employees were not similarly situated with Johnson is not clearly erroneous.

7. The *Green* court noted that "the history of the application of the Rule 26 proscription of fighting fails to demonstrate a prima facie case of racial discrimination because appellant and other blacks have not been treated disparately from whites who similarly had violated Rule 26 in the past." *Green,* 612 F.2d at 968. The court thus focused on the conduct underlying the violations of Rule 26, going beyond a comparison of rules violations.

Johnson argues that the district court's finding of no racial animus is inconsistent with various other evidence in the record. Specifically, he contends that Local 142's racial animus is indicated by 1) the unusual handling of his request for a grievance; 2) his testimony that a union agent and former Artim employee admitted, in substance, that the local was racially biased against Johnson; and 3) the union's failure to seek relief under its nondiscrimination clause of the collective bargaining agreement from the employer's practice of refusing to send new white drivers to train with Johnson.

Johnson's contention that the unusual handling of his grievance request indicates racial animus is subsumed under the district court's finding that Johnson presented no evidence that grievances for similarly situated white employees received different treatment from the union. Johnson argues that Local 142 showed discriminatory intent in using a Local 142 business agent rather than the typical shop steward to handle his grievance request from the beginning. The district court found that Johnson showed no evidence indicating that the grievances of similarly situated white employees received different treatment than did his grievance. We may reasonably infer from this finding that the handling of his grievance did not indicate racial animus. *See Uniroyal, Inc. v. Mumford,* 454 F.2d 1233, 1236 (7th Cir.1972) (court of appeals "must look to the evidence most favorable to the District Judge's findings and to such reasonable inferences as may be drawn therefrom"); *Triangle Conduit & Cable Co. v. Federal Trade Commission,* 168 F.2d 175, 179 (7th Cir.1948), *aff'd sub nom. Clayton Mark & Co. v. Federal Trade Commission,* 336 U.S. 956, 69 S.Ct. 888, 93 L.Ed. 1110 (1949) (findings should be liberally construed in support of a judgment or order and factual inferences supporting the judgment will be deemed to have been drawn).

Johnson also argues that the district judge should have made credibility findings regarding two aspects of his testimony that bear on Local 142's racial animus. Johnson testified that a black union agent and former Artim employee, Ernest Porter, called him on two separate occasions following his discharge. In the first conversation, Porter allegedly said to Johnson, " 'they going to [screw you], you know that don't you? ... You're black, you know that.... Don't let them get away with it.' " The second conversation was similar. At another point, Johnson testified that Artim had refused to send new white drivers to train with Johnson. Johnson argues that the union's failure to seek relief from this employer practice under the nondiscrimination clause of the collective bargaining agreement indicates racial animus.

Federal Rule of Civil Procedure 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." If a district judge does not make a credibility assessment for the testimony of a particular witness, we must assume that the judge considered all of the evidence when making findings of fact and that the judge rejected conflicting testimony as unreliable. *NLRB v. Alterman Transport Lines,* 587 F.2d 212, 216 n. 2 (5th Cir.1979); *Ruby v. American Airlines, Inc.,* 329 F.2d 11, 14 (2d Cir.1964), *vacated on other grounds,* 381 U.S. 277, 85 S.Ct. 1456, 14 L.Ed.2d 430 (1965). The judge justifiably could have determined that Johnson's testimony was unreliable or not probative. Regarding Johnson's alleged conversations with Porter, Porter denied at trial having had any such conversations with Johnson. Moreover, the statements themselves are ambiguous because it is unclear whether the "they" allegedly after Johnson stands for the union or the company. Porter was a union agent but had formerly been an Artim employee, so he conceivably could have been referring to the company. Furthermore, Johnson's credibility was at issue because he admitted at trial that he had lied in earlier depositions.

The judge may similarly have decided that Johnson's testimony was not credible regarding the company's refusal to send

new white drivers to train with Johnson and the union's failure to seek relief from this practice under the collective bargaining agreement. Even if the judge thought this testimony credible, he may well have believed it was not probative as evidence of the union's racial animus. Johnson offered no evidence that the union was aware of this discrimination or was requested to attempt to eliminate it. Without this basic knowledge on the union's part, Johnson cannot argue that the union had discriminatory intent or racial animus, and Johnson cannot convince us that the district court's finding was clearly erroneous.

In essence, Johnson is challenging the adequacy of the district court's findings. We held in *Denofre v. Transportation Insurance Rating Bureau*, 532 F.2d 43, 45 (7th Cir.1976), that substantial compliance with Rule 52(a) "necessitates that the findings of fact on the merits include as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." The trial court has done this here. The court's ultimate conclusion was that Johnson failed to prove any racial animus by Local 142, and in reaching this conclusion the court engaged in an extended analysis of disparate treatment, setting forth many subsidiary findings regarding the value of evidence submitted by Johnson on that issue. The steps by which the district court reached its ultimate finding of no racial animus are clear.

Although it may have been helpful to have had the district court's findings regarding Johnson's testimony, the district court's findings are nonetheless adequate. The judge did not need to go into excessive detail to support his finding of lack of racial animus; it was sufficient to elaborate on the factors he thought dispositive. *See NLRB v. Alterman Transport Lines*, 587 F.2d 212, 216 n. 2 (5th Cir.1979); Fed. R.Civ.P. 52(a) advisory committee's note (1946) (district judge "need only make brief, definite, pertinent findings and con-

clusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts"). In reaching the finding of no racial animus, the court did address in substantial detail the subissue of disparate treatment, on which the plaintiff submitted the most persuasive evidence. To have discussed further why he found no racial animus would have bordered on excessive elaboration. We may infer from the court's conclusion on racial animus that the court rejected Johnson's testimony.

### III. SUMMARY JUDGMENT ON HYBRID SECTION 301/FAIR REPRESENTATION CLAIM

Johnson argues that the district court erred in determining that his hybrid section 301/breach of the duty of fair representation claim was barred by the statute of limitations, and thus erred in granting summary judgment for Local 142 on that issue. Our review of a grant of summary judgment involves a two-step process in which we first determine whether there are any genuine issues as to any material facts and then, if no issues of material fact exist, we decide whether summary judgment is correct as a matter of law. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); Fed.R.Civ.P. 56(c). In this case the parties do not dispute the facts surrounding the timing of the filing of the complaint involving the hybrid section 301/fair representation claim. We therefore must decide whether the judge's determination that the section 301/fair representation claim was barred by the statute of limitations was correct as a matter of law.

In granting summary judgment, the district court held that the section 301 breach of contract/breach of the duty of fair representation claim was barred because the challenged conduct occurred in June 1975 and the claim was filed November 17, 1977, well after the running of the limitation period.[8] In reaching that determination,

---

8. The district court determined that the Indiana 90-day statute of limitations governing arbitra-

tion awards, Ind.Code Ann. ¶ 34-4-2-13 (West 1983), applied to the section 301 claim, applying

the court specifically held that the existence of a different statute of limitations period for the Title VII claim, which is 90 days after receipt of the right-to-sue letter, did not change the time requirements for filing the hybrid section 301/fair representation claim.

Johnson contends that the district court should have applied the doctrine of primary jurisdiction to this situation to toll the operation of the statute of limitations on the hybrid section 301/fair representation claim.[9] Johnson argues that the doctrine of primary jurisdiction operates to toll the statute of limitations on the hybrid claim until either the EEOC takes action on the Title VII charge or issues a right-to-sue notice to the charging party.

> the case law of *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and *Hall v. Printing and Graphic Arts Union, Local #3,* 696 F.2d 494 (7th Cir. 1982). The court also decided that the six-month limitation period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1982), applied to the breach of the duty of fair representation claim, relying on *Hall,* 696 F.2d at 499. The court then noted that Johnson's discharge occurred in June of 1975 and he did not file a claim until November 1977, 26 months after the 90–day limit and 23 months after the six-month limit.
>
> The day after the district court entered its order June 8, 1983, the Supreme Court handed down *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), holding that the statute of limitations for a hybrid section 301/fair representation claim was six months instead of 90 days for the section 301 claim and six months for the fair representation claim. The *DelCostello* six-month limitation has been applied retroactively by this circuit. *See Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 303 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Even applying *DelCostello* retroactively, Johnson still exceeded the limitations period by 17 months.

9. Local 142 argues that the hybrid section 301/fair representation claim should be barred regardless of whether we adopt Johnson's primary jurisdiction theory because the hybrid claim was filed as part of the amended complaint on October 3, 1978, more than the limitations period of six months after November 17, 1977, when Johnson filed his Title VII claim. According to Federal Rule of Civil Procedure 15(c), however, the hybrid section 301/fair representation claim relates back to the date of the original pleadings and therefore is not considered as being filed almost one year later.

■ Our view of the record indicates that Johnson did not raise this issue in district court and he thus waives its consideration on appeal. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 338 (7th Cir.1987); *Zbaraz v. Hartigan,* 763 F.2d 1532, 1544 (7th Cir.1985). The rule that a ground for reversal cannot be presented for the first time on appeal

> is particularly apt where ... factual questions may have been implicated as to which the judge made no findings because the issue was not directly raised and equally, where considerations underlying a subtle legal issue could have been exposed and distilled by the district court so as to facilitate more informed consideration by [an appellate] court.

Rule 15(c) provides that an amended pleading will relate back to the date of the original pleading if the claim or defense asserted in that amended pleading arose out of the same conduct, transaction, or occurrence. Under Rule 15(c), even if the statute of limitations has run, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment that "changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence," will relate back. 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[3], at 15–147–49, –51 (2d ed. 1985).

In this situation, Local 142 received fair notice in the original Title VII complaint of the section 301/fair representation claim because both claims emanated from the same occurrences—Artim's termination of Johnson and Local 142's decision not to file a grievance regarding that termination on Johnson's behalf. In his Title VII claim Johnson, acting *pro se,* filled out a form complaint provided by the clerk of court, naming Local 142 as a defendant. He alleged that the union had denied him the right to file a grievance against Artim on two specific occasions, the 16th and 18th of June, 1975. This refusal to file a grievance is the same factual situation underlying his section 301/fair representation claim against Local 142. The amendment falls within Rule 15(c) and thus relates back to November 17, 1977, when Johnson filed his Title VII claim. *Cf. Patterson v. General Motors Corp.,* 631 F.2d 476, 486 (7th Cir.1980) (dictum that amendment of complaint to allege claim under 42 U.S.C. § 1981 based on same facts as Title VII claim would relate back), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). If we adopted Johnson's primary jurisdiction theory, the hybrid 301 claim would not be barred by the statute of limitations.

*Terkildsen v. Waters,* 481 F.2d 201, 204–05 (2d Cir.1973). There are narrow exceptions to this rule when the issue presented goes to the district court's subject-matter jurisdiction, if the district court's decision is "plain error," *see Heiar v. Crawford County,* 746 F.2d 1190, 1197 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), or if there are " 'exceptional circumstances where justice demands more flexibility.' " *Zbaraz,* 763 F.2d at 1544 (quoting *Stern v. United States Gypsum Co.,* 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977)).

None of the exceptions applies in this case. Primary jurisdiction is distinct from subject-matter jurisdiction. Subject-matter jurisdiction goes to whether a district court had power to hear a case in the first instance. Primary jurisdiction, however, "is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." K. Davis, 4 *Administrative Law Treatise,* § 22:1, at 81 (2d ed. 1983). If a court holds that a particular agency has primary jurisdiction to decide a question, the court usually continues to have the power of review so that in the end it has power to make a final determination. *Id.* at 82. Thus a question of primary jurisdiction will typically involve only a question of whether the court's power should be interrupted for a time, and not a question of whether the federal court has initial power to hear a case.

Neither does the "plain error" exception apply in this case. We can conceive of a case in which an appellate court might determine that a district court plainly erred in not applying the primary jurisdiction doctrine because it was necessary to the district court's decision that an agency make a determination regarding an issue or issues in the case. This might occur, for example,

if a Federal Communications Commission (FCC) interpretation of a FCC regulation was crucial to the district court's decision. Even if the parties had not raised the issue before the district court, we might in that situation determine that the district court plainly erred in not deferring to the FCC for a determination. *Cf. City of Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116, 120–21 (7th Cir.1982) (reversing and remanding so that district court could stay proceedings pending FCC determination regarding FCC regulation); *see also United States v. Michigan National Corp.,* 419 U.S. 1, 4–5, 95 S.Ct. 10, 11–12, 42 L.Ed.2d 1 (1974) (per curiam) (noting that a federal court will generally stay proceeding awaiting determination by administrative agency having primary jurisdiction).

■ This is not that type of case, however. Johnson here asserts the primary jurisdiction issue as a *defense* to the statute of limitations—he is not claiming, and indeed could not claim, that the court erred in not applying the doctrine of primary jurisdiction. Johnson's Title VII claim had already been acted upon by the EEOC, which issued him a right-to-sue letter, and his hybrid section 301/fair representation claim is of a type generally brought in federal court. There is no requirement that that claim first be brought before either the EEOC or the National Labor Relations Board. *See Vaca v. Sipes,* 386 U.S. 171, 182–84, 87 S.Ct. 903, 912–13, 17 L.Ed.2d 842 (1967). There was absolutely no reason for the district court to apply the doctrine of primary jurisdiction in this case.

Finally, we find no exceptional circumstances demanding more flexibility. In an attempt to defeat summary judgment on his claim, Johnson did raise in district court an issue similar to that of primary jurisdiction, which we address next. Because no exceptions apply, Johnson has waived the primary jurisdiction issue on appeal.[10]

---

10. We are not deciding the primary jurisdiction question here. We have, however, previously disfavored the position that the doctrine of primary jurisdiction operates to toll a statute of

limitations so as to excuse a failure to file a claim. *See Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261, 268 (7th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d

Johnson argues that apart from considerations of primary jurisdiction, time for filing a hybrid section 301/fair representation claim should be tolled for policy reasons until the EEOC has acted on a Title VII claim. He notes that if a court enters a judgment on a section 301/fair representation claim under the same set of facts being considered by the EEOC regarding a Title VII claim, the EEOC or the charging party would be barred under the doctrine of collateral estoppel from litigating the Title VII race discrimination claim. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). The end result, according to plaintiff, is that the enforcement scheme of Title VII will be weakened because it will impair the Commission's administrative discretion to pursue civil actions on behalf of aggrieved individuals.

Similar arguments were rejected in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Supreme Court recognized that requiring the filing of a lawsuit under the statutory scheme of 42 U.S.C. § 1981 could deter benefits of the administrative process set up under the Title VII statutory scheme such as conciliation and persuasion. Nevertheless, the Court held, this

was not a sufficient reason to allow cross-statute tolling:

[T]hese are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. Under some circumstances, the administrative route may be highly preferred over the litigatory; under others, the reverse may be true. We are disinclined in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a § 1981 action while an EEOC claim is pending.

*Id.* at 461, 95 S.Ct. at 1728. *See also International Union of Electrical Workers Local 790 v. Robbins & Meyers, Inc.*, 429 U.S. 229, 239, 97 S.Ct. 441, 448, 50 L.Ed.2d 427 (1976) (refuting argument that danger of possible conflict between the concurrent pursuit of both collective-bargaining and Title VII remedies should result in tolling the limitations period for the latter).

Plaintiff argues that *Johnson* must be distinguished from this case because in *Johnson*, the Title VII scheme *and* the

615 (1985). In *Brunswick,* the plaintiff claimed that its failure to file a complaint within the four-year antitrust statute of limitations should be excused because the statute was tolled until the Patent Office, which has primary jurisdiction over any dispute regarding patent validity, completed its patent-interference proceedings. The plaintiffs relied on *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394 (9th Cir.1980), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), in which the Ninth Circuit held that the antitrust statute of limitations does not begin to run until the conclusion of any administrative proceedings that the plaintiff is required to pursue by the doctrine of primary jurisdiction. *Brunswick,* 752 F.2d at 268–69. We found the holding of *Mt. Hood* "surprising, ... because the doctrine of primary jurisdiction ... ordinarily comes into play *after* suit is filed and the statute of limitations is thus stopped from running, when the defendant asks that the suit be stayed because a potentially controlling question is within an agency's exclusive jurisdiction to decide, at least in the first instance." *Id.* at 269. We also noted that "[t]o allow the

statute of limitations to be tolled on the basis of a defense that might be raised if the suit were filed on time is unconventional." *Id.* Furthermore, "[c]onsidering that agency proceedings can greatly prolong antitrust litigation when primary jurisdiction is invoked ... we question[ed] the wisdom of allowing a plaintiff to wait for the unexpired portion of the statute of limitations to expire after the agency proceedings are complete before he sues, rather than suing if need be while those proceedings are going on and staying the suit till they have been completed." *Id.*

In *Brunswick* we did not specifically reject the holding of *Mt. Hood,* distinguishing it on the grounds that the patent-interference proceeding "could provide at best some partial and parallel relief to the antitrust suit but would not be a condition precedent to it ... or a complete substitute for it, or even a proceeding that 'promises to be of material aid in resolving' a potentially dispositive issue." *Id.* at 270 (quoting *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 302, 93 S.Ct. 573, 580, 34 L.Ed.2d 525 (1973)).

section 1981 scheme were expressly mandated by Congress, while in this case, Title VII is a statutory scheme, but the section 301/fair representation claim is a *judicially implied* cause of action. This distinction is not sufficient, however, to compel a different result from that of *Johnson.* Plaintiff apparently hearkens to the language in *Johnson,* quoted above, that the Supreme Court emphasized that Congress had stressed the existence and independence of the two remedies. The Court also implicitly recognized judicially implied remedies, however, when it stated that " 'the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII *and other applicable state and federal statutes.*' " *Johnson,* 421 U.S. at 459, 95 S.Ct. at 1719 (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)) (emphasis added). This language would appear to include judicially-implied causes of action under federal statutes, such as a hybrid section 301/fair representation claim.

Furthermore, the Supreme Court in *Johnson* focused on the independence of Title VII from other remedies, not on whether remedies were express or judicially-implied. In *Johnson,* the Court stated that "[o]nly where there is complete identity of the causes of action will the ... courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period." *Johnson,* 421 U.S. at 468 n. 14, 95 S.Ct. at 1724 n. 14. The hybrid section 301/fair representation claim, like the section 1981 claim in *Johnson,* is independent of and separate from the Title VII claim. A Title VII action is directed at a company's or a union's discriminatory conduct, while the section 301/fair representation claim alleges the company's breach of the collective bargaining agreement and the union's failure to protect the plaintiff's rights under that agreement. *See Waller v. International Harvester Co.,* 574 F.Supp. 166, 169 (N.D. Ill.1983) (applying *Johnson* analysis, holding that filing Title VII claim with the EEOC did not toll the statute of limitations on plaintiff's fair representation claim because the Title VII action was independent of the fair representation claim). The Supreme Court in *Alexander* also expressly recognized that contractual rights under a collective bargaining agreement and Title VII rights "have legally independent origins and are equally available to the employee." *Alexander,* 415 U.S. at 52, 94 S.Ct. at 1022. *See also International Union of Electrical Workers Local 790 v. Robbins & Meyers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 446, 50 L.Ed.2d 427 (1976) (pending grievance or arbitration procedures under the collective bargaining agreement did not toll the statute of limitations for filing a claim with the EEOC, stressing that the Supreme Court had previously reaffirmed the independence of Title VII remedies from other preexisting remedies available to an aggrieved employee). The precedents of *Johnson, Alexander,* and *International Union of Electrical Workers Local 790* persuade us that the hybrid section 301/fair representation claim, based in part on rights under the collective bargaining agreement, is independent of a claim under Title VII, and thus the time for filing a section 301/fair representation claim is not tolled by pursuing a Title VII claim with the EEOC.

■ There are also policy considerations that weigh against tolling the statute of limitations on the section 301/fair representation cause of action until Title VII procedures are completed by the EEOC. In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), the Supreme Court ruled that the statute of limitations for a hybrid section 301/fair representation suit was six months. The Court emphasized "the relatively rapid final resolution of labor disputes favored by federal law," and likened the breach of the duty of fair representation claim to the claim of a union unfair labor practice before the National Labor Relations Board, from which the six-month statute was borrowed. *Id.* at 168, 170, 103 S.Ct. at 2292, 2293. Policies supporting the need to rapidly resolve labor disputes weigh against tolling the stat-

ute of limitations for section 301/fair representation claims—to do so would undermine the reasoning and ruling of *DelCostello*. We therefore hold that the policy considerations do not favor, and indeed weigh against tolling the statute of limitations for a section 301/fair representation claim while Title VII charges are pending with the EEOC. We affirm the district court's decision to grant summary judgment on the ground that the hybrid claim is barred by the statute of limitations.

## IV. ATTORNEYS' FEES

 Local 142 requests attorneys' fees and costs in connection with this appeal.[11] In *Bugg v. International Union of Allied Industrial Workers Local 507*, 674 F.2d 595, 599–600 (7th Cir.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982), this court held that prevailing defendants may be entitled to attorneys' fees and costs in an appeal of a Title VII case if the plaintiff's appeal is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Local 142 argues that this is the type of rare case in which a Title VII defendant is entitled to attorneys' fees because there was no merit to Johnson's argument that the primary jurisdiction doctrine tolled the statute of limitations for the hybrid section 301/fair representation claim and because Johnson "totally failed at trial to present any evidence of racial animus."

The fact that plaintiff did not prevail, however, does not necessarily mean that the *Christiansburg* criteria are met. In *Bugg*, the district court had explicitly found that the plaintiff's claims were "entirely groundless," plaintiff's court-appointed counsel at the district court level had informed the plaintiff that the case was "wholly lacking in merit," and this court had rejected the plaintiff's motion for appointment of counsel for the appeal. *Bugg*,

674 F.2d at 600–01. This case is distinguishable, as we have appointed counsel for Johnson and, although we have rejected his arguments, do not find them either entirely groundless, frivolous, or unreasonable so as to justify awarding attorneys' fees to Local 142.

## V. CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment on the hybrid section 301/fair representation claim and the court's ruling that Johnson has not established a prima facie case of racial discrimination to support a Title VII claim. In addition, we deny Local 142's request for attorneys' fees and costs associated with this appeal.

AFFIRMED.

---

11. Local 142 concedes that it can only seek the fees incurred as a result of the appeal, because it did not file a cross-appeal from the district court's decision not to award fees in connection with the trial itself.