**Abel BITUIN, Plaintiff,**

v.

**SUPERVALU, HOLDINGS, INC., Defendant.**

**No. 01–CV–2276.**

United States District Court, C.D. Illinois, Urbana Division.

July 29, 2003.

---

Brian T. Schurter, Rantoul, IL, for Plaintiff.

Elaine Massock, Urbana, IL, for Defendant.

## ORDER

BERNTHAL, United States Magistrate Judge.

In November 2001, Plaintiff Abel Bituin filed a Complaint (# 1) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, against Defendant Supervalu Holdings, Inc. (hereinafter "Supervalu"), alleging that Supervalu discharged him solely because of his national origin. In February 2003, Defendant Supervalu filed a Motion for Summary Judgment (# 26). After reviewing the parties' pleadings and memoranda, this Court **GRANTS** Defendant's Motion for Summary Judgment (# 26).

## I. Background

Mr. Bituin's race is Asian and his national origin is Filipino. (Abel Bituin Aff., 2–3.) He worked in Supervalu's warehouse from 1994 until his termination in 2001. (Bituin Dep., p. 6.)

On May 15, 2001, Mr. Bituin was sitting by himself at a table in Supervalu's break room when a malfunctioning change machine began to dispense dollar coins. (Bituin Dep., pp. 37–38.) At first only two coins fell out, which Mr. Bituin retrieved and took back to his table. (Bituin Dep., pp. 37–38.) A few moments later the machine released four more dollars and Mr. Bituin took those too. (Bituin Dep., pp. 52–53.)

While Mr. Bituin sat quietly with his six coins, the machine's sporadic but increasingly voluminous discharge of currency attracted the attention of his coworkers. (Quentin Mayfield Dep., pp. 5–8.) Two of the workers began to jostle the machine in an attempt to increase its output and sev-

eral others scrambled to collect the money spilling out onto the break room floor. (Mayfield Dep., pp. 4–9.)

Amidst the chaos, Quentin Mayfield, another Supervalu employee, announced his intention to return the money to the management and collected ninety-seven coins from his coworkers and from the floor in front of the machine. (Mayfield Dep., pp. 7–9.) When Mr. Mayfield finished, he allegedly called to supervisor Andy Pecunas, who met him halfway up the staircase leading from the ground floor to the first mezzanine level where the break room was located. (Mayfield Dep., p. 9.) Mr. Mayfield testified that he was in the process of handing a cup containing ninety-seven coins to Mr. Pecunas when Mr. Bituin passed them on the stairs, deposited a handful of change in the cup, and continued on his way. (Mayfield Dep., p. 8.) Mr. Bituin reported only that he informed Mr. Pecunas the change machine was broken and returned the six coins in his possession. (Bituin Dep., pp. 41–43.)

After an investigation into the events of May 15, personnel director Kathy Knudsen and general manager Mike Guth decided to fire all of the individuals seen taking money from the machine except Mr. Mayfield (Knudsen Aff., p. 23), whom the managers allegedly believed was innocent of any wrongdoing. (Knudsen Aff., pp. 33–35.) Mr. Bituin and five other individuals, several of whom were Caucasian, were terminated. (Knudsen Aff., p. 25.) Mr. Mayfield, who is also Caucasian, suffered no adverse employment action.

Mr. Bituin called Ms. Knudsen the day after his termination in an unsuccessful attempt to win his job back, arguing that "what happened in the break room—... was wrong, but I shouldn't have been terminated," and he had "seen worse things in the warehouse that were grounds for termination [but] those people were still there." (Bituin Aff., p. 48.)

Mr. Bituin filed suit against Supervalu on November 16, 2001, for damages in excess of $75,000 and attorneys fees to compensate for unlawful employment practices committed against him pursuant to Title VII of the Civil Rights Act of 1964, Sections 704(a) and (g). 42 U.S.C.2000e–5(a), 2000e–5(g).

## II. Standard of Review

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits, and other evidence show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(b). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any genuine dispute of material fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## III. Analysis

■■■ Under Title VII, it is unlawful for an employer to discriminate against an employee because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). An employee may demonstrate his employer's intentional discrimination by providing either direct or indirect evidence. Direct evidence of discrimination is evidence that one can interpret as an acknowledgment of the employ-

er's discriminatory intent without relying on any inference. *Mojica v. Gannett Co.*, 7 F.3d 552, 561 (7th Cir.1993); *Rothman v. Emory University*, 123 F.3d 446, 451 (7th Cir.1997). To constitute direct evidence of discrimination a statement must relate to the motivation of the decisionmaker responsible for the contested decision. *Id.*

■ Direct evidence of intentional discrimination is rare. *Mills v. First Federal Savings & Loan Ass'n*, 83 F.3d 833, 841 (7th Cir.1996). When it is not available, a plaintiff can prove his discrimination claim with indirect or circumstantial evidence by employing the burden-shifting method originally established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this method, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817.

The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination, after which the employee must be afforded a fair opportunity to show that employer's stated reason for the plaintiff's termination was pretext. *Id.* at 802–05, 93 S.Ct. 1817.

## A. Prima Facie Case of Discrimination

■ To establish a prima facie case of racial discrimination, the plaintiff must prove that "1) he belongs to a protected class, 2) he performed his job according to the employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly-situated employees outside the protected class were treated more favorably by the defendant." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir.2001). Mr. Bituin has clearly satisfied the first and third elements of the prima facie case: He is a member of a protected class because of his ethnicity and has suffered an adverse employment

action in the form of termination. However, the parties dispute whether Mr. Bituin has established the second and fourth elements: Whether Mr. Bituin was performing his job according to Supervalu's legitimate expectations at the time he was terminated, and whether Supervalu treated him less favorably than similarly-situated employees outside the protected class.

### 1. Legitimate Expectations

■ The second element of the prima facie case of discrimination requires that Mr. Bituin prove he was meeting Supervalu's legitimate expectations at the time of his discharge. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir.2002). The employer has raised no deficiencies regarding Plaintiff's performance other than whether he intended to steal the coins. Because employers have a legitimate expectation that employees will be honest in their dealings with the company, Mr. Bituin must prove that he did not intend to steal the six coins he took from the change machine.

Supervalu argues that Mr. Bituin admitted his intent to steal the coins in both his deposition and a post-termination phone call made to personnel director Kathy Knudsen. However, a review of the record reveals that Supervalu mischaracterizes Mr. Bituin's statements, neither of which amounts to a confession of larcenous intent that would eliminate any question of fact regarding Mr. Bituin's state of mind.

First, Supervalu asserts in its memorandum that Mr. Bituin "admitted to Kathy Knudsen ... that he took six dollars and it was wrong." (Def.'s Rep. Mem., # 29, p. 11.) Mr. Bituin's actual testimony is far less incriminating. He stated in his deposition that he "mentioned [to Kathy Knudsen] several things that happened throughout my seven years [at the warehouse]. I've seen—I thought what happened in the

break room, it was wrong, but I shouldn't have been terminated." (Bituin Dep., p. 48.) One possible reading of Mr. Bituin's statement condemns the wholesale looting of the broken change machine by Mr. Bituin's coworkers. Another asserts that Mr. Bituin's actions were morally blameless but "wrong," i.e., improvident, in light of Supervalu's hard-line stance on employee theft and Mr. Bituin's subsequent termination. In any event, Mr. Bituin's statement falls short of being an admission of guilt.

Second, Supervalu states that "the Plaintiff admits ... he took the money, sat down with it, took money again, and 'right after' felt that it was not his money." (# 29, p. 11.) Supervalu accurately summarizes Mr. Bituin's testimony but fails to articulate how it gives rise to an inescapable conclusion that Mr. Bituin intended to steal from the company. Mr. Bituin's statement that he "took four or five more dollars, and right after, ... felt that it was not my money" (Bituin Dep., pp. 52–53), tells the Court neither how long after taking possession Mr. Bituin decided to return the money nor what he was thinking before taking possession of the six coins. Mr. Bituin may have intended to return the money all along, he may have intended never to return the money, or he may have had no intent whatsoever before deciding to return the money. Mr. Bituin's statement offers little guidance.

In the absence of an admission of guilt from Mr. Bituin, competing testimony precludes summary judgment on the issue of Mr. Bituin's intent. On one hand, Mr. Bituin categorically denies ever intending to steal the coins. (Bituin Aff., 10.) On the other, the circumstances under which Mr. Bituin returned the money suggest that he may only have returned the coins for fear of being caught by the supervisor. (Knudsen Dep., pp. 25–28.) Consequently, the question of whether Mr. Bituin was

meeting Supervalu's legitimate expectations at the time he was terminated turns on a credibility determination within the exclusive purview of a jury. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. This Court cannot conclude as a matter of law that Mr. Bituin was not meeting his employer's legitimate expectations at the time of his discharge.

### 2. Similarly–Situated Employees Outside the Protected Class

A plaintiff must also show that "similarly-situated employees outside the protected class were treated more favorably by the defendant" to establish a prima facie case of racial discrimination under Title VII. *Gordon*, 246 F.3d at 886. The Seventh Circuit has stated as follows:

> [A] plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.... An employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity.

*Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2002) (internal citations omitted).

■ Mr. Bituin and Mr. Mayfield are not similarly situated because (a) a detailed comparison reveals that Mr. Bituin's discreet asportation of six coins is distinguishable from Mr. Mayfield's conspicuous attempt to return almost 100 coins to the company, and (b) Supervalu believed that Mr. Bituin intended to steal from the company.

### a. The Specificity of the "Similarly–Situated" Analysis

The "similarly-situated" calculus requires a detailed comparison of employees, and "differentiating or mitigating circumstances" are addressed with a high degree of specificity. *See Johnson v. Artim Transportation System, Inc.* 826 F.2d 538, 543–44 (7th Cir.1987).

In *Green v. Armstrong Rubber Co.*, a black Title VII plaintiff assaulted his white coworker with "a knife-like work tool." The black plaintiff was discharged while the white employee was merely suspended, even though both employees violated the same company rule against fighting. *Johnson*, 826 F.2d at 543–44, *summarizing Green v. Armstrong Rubber Co.*, 612 F.2d 967 (5th Cir.1980). The court found that the two employees were not similarly situated because, although both employees were guilty of the same general transgression, the plaintiff's use of a weapon warranted a more severe punishment. The Seventh Circuit embraced the *Green* court's reasoning in *Johnson v. Artim Transportation System*, holding that "[e]ven if a plaintiff shows different treatment after violations of the same rule, he or she might not succeed in establishing a prima facie case" because dissimilar conduct might warrant dissimilar treatment. *Johnson*, 826 F.2d at 543–44.

*Johnson v. Artim Transportation* is significant not for the narrow proposition that violations of the same rule are insufficient without more to establish substantial similarity, but for the broader implicit holding that the "similarly situated" calculus looks past general comparisons to the specific "differentiating or mitigating circumstances" of the case. Had the Seventh Circuit meant for district courts to compare employees in soft focus, it would not have held that two employees guilty of the same infraction were not similarly situated. *See id.*

In the case at bar, Mr. Bituin urges the Court to find that he and Mr. Mayfield are similarly situated because they both returned coins that fell from the malfunctioning change machine. Mr. Bituin asks this Court ignore what even he acknowledges are "significant differences" between his conduct and Mr. Mayfield's. (Pl.'s Mem., # 28, p. 9.) The specificity of the analysis in *Johnson* mandates that this Court make a more detailed comparison, and it is clear that Mr. Bituin's discreet and temporary seizure of six coins is distinguishable from Mr. Mayfield's conspicuous and concerted efforts to collect and return almost $100 worth of coins.

### b. "Similarly Situated" from the Perspective of the Employer

Furthermore, the "similarly situated" calculus operates from the perspective of the employer. In other words, a prima facie case of discrimination does not require an objective comparison of two employees, but rather a subjective comparison from the viewpoint of the employer. In cases similar to the one at bar, the fourth prong will overlap with the second when the "similarly-situated" calculus compares two employees in terms of their meeting the employer's legitimate expectations. However, the second prong of the prima facie discrimination test asks whether the plaintiff was *actually* meeting "the employer's legitimate expectations" at the time of his discharge. *Gordon*, 246 F.3d at 878. The fourth prong, by contrast, is insensitive to whether or not the plaintiff's job performance was objectively satisfactory. Instead, the "similarly situated" inquiry requires only that there be no "differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617. Accordingly, an employer's honest belief in some material difference between two employees, regardless of its

accuracy, may be a "differentiating or mitigating" circumstance sufficient to render two employees distinguishable for the purposes of the fourth element of the prima facie test.

A "similarly situated" calculus that operates from the employer's perspective is consistent with Title VII's remedial purposes. Title VII prohibits an employer from failing or refusing "to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's race, color, religion, sex, or national origin." 42 U.S.C.2000e–2(a). Title VII does not require that an employer's reasons for discharging an employee be correct, only that they be nondiscriminatory. This is reflected in the pretext segment of the *McDonnell Douglas* burden shifting analysis, which asks "[if] the employer gave an honest explanation of its behavior," rather than whether those reasons were "foolish or trivial or even baseless." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir.1999). Consequently, whether the "differentiating or mitigating circumstances" that the employer relies upon to distinguish between two employees exist in fact or entirely (but justifiably) in the employer's imagination is irrelevant to the "similarly situated" calculus.

■ A "similarly situated" calculus that operates from the perspective of the employer does not collapse the fourth prong of the prima facie discrimination test with the pretext analysis. Whether two employees are similarly situated and whether an employer offered "a lie, a specifically phony reason for some action," *Jackson*, 176 F.3d at 983 (*quoting Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995)), are two separate inquiries, and common factual issues regarding the employer's honest beliefs do not serve to make them otherwise.

It is undisputed that Supervalu believed that Mr. Bituin intended to permanently deprive the company of the coins he retrieved from the malfunctioning change machine while Mr. Mayfield did not. Accordingly, Mr. Bituin and Mr. Mayfield are distinguishable from the employer's perspective, and therefore they are not "similarly situated." The genuine issue of material fact that remains with regard to Mr. Bituin's actual intent is irrelevant to the Court's analysis of the fourth element of the prima facie case of discrimination under Title VII. Because Mr. Bituin and Mr. Mayfield are not "similarly situated," Plaintiff has failed to establish his prima facie case of discrimination and the Court grants summary judgment in favor of Defendant.

### B. Pretext Analysis

This Court grants summary judgment for Supervalu based on Mr. Bituin's failure to establish the fourth element of this prima facie case of discrimination. Nevertheless, we will assume *arguendo* that Mr. Bituin has established a prima facie case of discrimination and address the question of pretext.

Once a Title VII plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817. The burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's proffered reason is pretext. *Id.* However, the Court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Rather, we must determine whether the employer gave an honest explanation of its behavior.

In other words, there is no Title VII violation "if [Supervalu] honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Jackson*, 176 F.3d at 984.

▮ Here also, Plaintiff has failed to sustain his burden of producing evidence Supervalu did not honestly believe in the nondiscriminatory reasons it offered for Mr. Bituin's discharge. Mr. Bituin rests on his declaration of innocence, but the question of whether he actually stole from the company is irrelevant to the pretext analysis, which asks only if Supervalu honestly believed its nondiscriminatory reasons for the adverse employment action. *Jackson*, 176 F.3d at 984. Mr. Bituin offers no evidence that the proffered reasons for his termination were pretext, and lists among the undisputed facts personnel director Kathy Knudsen's conviction that Mr. Bituin's "intention was ... to steal from the company," (# 28, p. 2; Knudsen Dep., pp. 26–27), as well as, puzzlingly, Mr. Bituin's own belief that Supervalu's proffered reasons his termination were bona fide (# 28, p. 2; Bituin Dep., p. 28). In light of the evidence that Supervalu honestly believed in Mr. Bituin's guilt, and Mr. Bituin's failure to offer any evidence to the contrary, this Court is confident that no reasonable jury could find in favor of Mr. Bituin on the issue of pretext. Accordingly, the Court grants summary judgment in favor of Supervalu.

## IV. Summary

For the reasons set forth above, this Court **GRANTS** Defendant Supervalu's Motion for Summary Judgment (# 26). The Clerk is directed to enter judgment in favor of Defendant. This case is terminated.