Ann HALL, Plaintiff-Appellant,

v.

**PRINTING AND GRAPHIC ARTS UNION, LOCAL # 3, et al., Defendants-Appellees.**

No. 82–1109.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1982.

Decided Dec. 21, 1982.

Richard J. Prendergast, Chicago, Ill., for plaintiff-appellant.

Robert E. Fitzgerald, Jr., David L. Carden, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., Donald F. Sugerman, Miller, Cohen, Martens & Sugerman, Detroit, Mich., for defendants-appellees.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and HILL,* Senior District Judge.

CUMMINGS, Chief Judge.

Plaintiff Hall was discharged from employment with defendant Consolidated Accounting Systems, Inc. ("Consolidated") when she refused to perform certain newly assigned work. She complained to her union, Printing and Graphic Arts Union, Local No. 3 ("the Local"), and the union initiated discussions with Consolidated on her behalf.[1] Dissatisfied with the course of those discussions, Hall threatened legal action against the Local if it did not take her grievance to arbitration. She also notified the Local's national affiliate, International Printing and Graphic Communications Union ("the International"), of her dissatisfaction with the Local's handling of her grievance. The International requested that Hall desist from commencing legal action so

---

* The Honorable Irving Hill, Senior District Judge for the Central District of California, is sitting by designation.

1. The collective bargaining agreement between Consolidated and the Local sets up a three-stage procedure for handling grievances by employees who claim a violation by Consolidated of a right allegedly secured them by the agreement. The relevant provisions of the agreement are as follows:

A. Any employee having a complaint or grievance arising under the terms of this agreement shall first discuss the matter with the foreman or superintendent. Should the employee so desire he may have the chapel chairman join him in presenting his grievance to the foreman or superintendent.

B. If the grievance is not disposed of an appeal may be made to the President of the employer or his designated representative and an official of the Union [the Local] shall be present and shall assist in the handling of the grievance.

C. Should the grievance not be disposed of at this stage, the Employer and the Union shall jointly ask the United States Mediation and Conciliation Service to submit a list of five arbitrators out of which the parties of the agreement shall select one who shall take testimony in the matter and his decision shall be final and binding on all parties. All cost of arbitration shall be borne equally by the parties to this agreement.

Hall's grievance entered the second stage when the Local commenced discussion on her behalf with Consolidated.

that it might investigate the matter and "attempt to get the situation corrected" if necessary. Hall affidavit, exhibit 6. Discussions continued and on November 11, 1980, the Local informed Hall that it would pursue her grievance no further. Hall subsequently informed the International of the Local's decision and requested that the International intervene on her behalf and "promptly demand that the employer [Consolidated] mediate this dispute." Hall affidavit, exhibit 8. The International denied Hall's request on the ground that it lacked any authority to make any such demand upon Consolidated. Some ten months after the Local's refusal to arbitrate her grievance and eight months after the International's refusal to intervene, Hall commenced this action in federal district court under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

In her complaint, Hall charges that Consolidated violated its collective bargaining agreement with the Local when it fired her, that the Local breached its duty of fair representation when it declined to take her grievance to arbitration,[2] and that the International breached the same duty when it refused to intervene on her behalf. She seeks compensatory and punitive damages against all three defendants and reinstatement with back pay against Consolidated. In the district court below, Consolidated and the Local moved for summary judgment on the grounds that (1) Hall had failed to exhaust internal union remedies prior to seeking legal remedy in federal court and (2) Hall's claims were time-barred by Illinois' 90-day statute of limitations governing actions to vacate arbitration awards.[3] The International also moved for summary judgment on the grounds that (1) it owed Hall no duty of fair representation because it was not a party to the collective bargaining agreement between the Local and Consolidated and (2) it had neither ratified nor authorized the Local's decision not to arbitrate her grievance. In separate minute orders, the district court granted defendants' motions "for the reasons set forth in the [defendants'] memoranda." This appeal followed.

### I. Plaintiff's Claim Against Consolidated

■ We are asked to choose an appropriate statute of limitations for a federal claim not expressly governed by any federal statute. To do this we must consider "[1] the nature of the federal claim and [2] the federal policies involved." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1562–63, 67 L.Ed.2d 732. Consolidated argues that plaintiff's claim is analogous in nature to one to vacate an arbitration award. Plaintiff argues that her claim is more analogous to a breach of contract suit than an action to vacate an arbitration award because her grievance against Consolidated was never arbitrated. Both concede that federal labor policy favors prompt resolution of labor disputes, but plaintiff argues that notwithstanding that policy we should apply Illinois' 10-year statute of limitations governing breach of contract suits. Consolidated contends that the 90-day limitations rule in Illinois' Arbitration Act is better suited for quick dispute resolution and that we should therefore apply it.

■ In *Mitchell, supra,* the Supreme Court adopted New York's 90-day limita-

---

**2.** Hall does not assert an absolute right to arbitration of her grievance but a right not to have her grievance dismissed by the Local for arbitrary or discriminatory reasons. See *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842.

**3.** Section 12(b) of the Illinois Uniform Arbitration Act provides as follows:

An application [to vacate an arbitration award] under this Section shall be made within 90 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.

Ill.Rev.Stat. ch. 10, § 112(b) (1981). We will shortly release a decision applying this provision to a suit by an employee under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, see *Stevens v. Gateway Transportation Co.,* 696 F.2d 500 (7th Cir.1982).

tions rule governing suits to vacate arbitration awards as the appropriate measure of the timeliness of an employee's claim against his former employer for wrongful discharge. The only difference between that case and the one before us is that there the employee's grievance had been previously arbitrated and here it has not. We think that insufficient cause to apply a different limitations rule.

To choose a limitations rule in this case is to strike a balance between the right of an ex-employee to seek legal redress for an unlawful discharge from employment and the rights of an employer to be free of the risk of forever having to make salary payments to discharged employees and of the public to be free of the disruptive effects of lingering instability in labor relations. The longer the length of time following an employee's discharge, the greater the magnitude of risk to his former employer [4] and the greater the likelihood of possible inconvenience to the public. The greater the opportunity for the employee to challenge his discharge prior to commencing suit, the less essential it is that he be afforded a chance to challenge his discharge in court.

Plaintiff herein had a prior opportunity to challenge the lawfulness of her discharge from employment. The collective bargaining agreement between the Local and Consolidated establishes a procedure by which aggrieved employees may challenge actions by Consolidated. Hall availed herself of that procedure by filing a grievance with the Local. That makes her present suit against Consolidated analogous in nature to one to vacate an arbitration award. Like the plaintiff in a suit to vacate an arbitration award, Hall is attempting to resurrect a grievance previously laid to rest. And, no less than if Hall's grievance had been fully arbitrated, to allow Hall's suit against Consolidated would be to subject Consolidated to the considerable future risk of having to reinstate and pay up to ten years of back wages to discharged employees.

 Nothing in the language of the collective bargaining agreement convinces us that decisions by the Local not to pursue an employee's grievance all the way to arbitration are any less final or reliable than arbitration awards.[5] It may be argued, however, that it should be easier for an employee to seek redress in court for an allegedly unlawful discharge when his grievance has not been fully arbitrated than when it has been fully arbitrated. The necessity of allowing suit might theoretically vary with the extent of an employee's prior opportunity to contest his discharge. This of course assumes—improperly, we think—that private collective bargaining often affords too little procedure to grievances that have merit. In any case, it would be exceedingly unwise to apply a 90-day rule when an employee's grievance has been pursued by his union all the way to arbitration and a 10-year rule when, as here, it has been pursued but not to arbitra-

**4.** The risk to the employer increases because as the length of time following discharge increases, both the amount of back wages and the uncertainty of being held liable to pay those wages also increase.

**5.** Plaintiff attempts to distinguish her suit from one to vacate an arbitration award by arguing that unlike an arbitration award, a decision by the Local not to take her grievance to arbitration is not final and binding. We disagree. There are three stages in the procedure described in the collective bargaining agreement for handling employee grievances. Grievances "not disposed of" at stage one advance to stage two; those "not ... disposed of" at stage two advance to stage three where an arbitrator hears testimony on both sides and renders a decision "final and binding on all parties." See note 1 *supra*. The agreement thus contemplates the disposition of at least some grievances short of stage three, and one goal of federal labor policy is that the number of such dispositions be as large as possible. See *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842. To afford dispositions at stages one and two less weight and finality than those at stage three would be to frustrate this goal. Parties would be less willing to resolve disputes in early stages because resolution at later stages would be more reliable. Nothing in the language of the agreement convinces us that the Local and Consolidated intended this result. Dispositions at stages one and two are not expressly described as "final and binding" simply because whether they are so depends upon whether the parties take them to the next stage of the grievance procedure.

tion. The deterioration of evidence over time is the same regardless of arbitration and the importance to an employer of being able to rely upon a settlement reached after negotiation with a union is no less than the importance of being able to rely upon a settlement reached after arbitration. In both cases, the employer needs to know how many employees it is carrying on its payroll so that it may plan its operations accordingly. To apply a longer limitations rule to claims challenging arbitrated settlements than to non-arbitrated settlements would be to provide employers with a strong incentive to arbitrate every labor grievance regardless of merit. "This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully." *Vaca v. Sipes,* 386 U.S. 171, 192, 87 S.Ct. 903, 917, 17 L.Ed.2d 842. Limitations rules should not promote costly and time-consuming adjudicative processes, especially in the field of labor relations where federal policy strongly favors the "relatively rapid disposition of labor disputes." *Mitchell,* 451 U.S. at 63, 101 S.Ct. at 1564; quoting *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192.

II. *Plaintiff's Claim Against The Local*

Plaintiff argues that her damage claim against the Local for breach of its fair representation duty is analogous in nature to a common law tort claim. Defendant Local argues that it is more analogous to a suit to vacate an arbitration award or to an unfair labor practice claim under the National Labor Relations Act, 29 U.S.C. 151 *et seq.* For the sake of uniformity, plaintiff

urges us to apply to her would-be tort claim against the Local the same statute of limitations governing breach of contract suits that she urges us to apply to her would-be contract claim against Consolidated. Defendant Local argues that either the 6-month limitation in Section 10(b) of the National Labor Relations Act or the 90-day limitation in Illinois' Arbitration Act would better serve the federal policy favoring quick termination of labor disputes.

██ This Circuit, other federal Circuits, and the National Labor Relations Board have all held that breach by a labor union of its statutory duty of fairly representing members is an unfair labor practice under the National Labor Relations Act. See *Mitchell,* 451 U.S. at 67–68 n. 3, 101 S.Ct. at 1566 n. 3 (Stewart, J. concurring). And, at least for purposes of choosing a limitations rule, an unfair representation suit in federal court is certainly analogous in nature to an unfair labor practice complaint before the National Labor Relations Board. Given this, and given that a 6-month limitations rule better serves federal labor policy than a 10- or 2-year rule, we choose to apply to Hall's claim against the Local the 6-month limitations rule of Section 10(b) of the National Labor Relations Act.[6]

██ To this choice three objections may be raised. First, it may be argued that we must look to Illinois law in choosing an appropriate statute of limitations. The timeliness of an unfair representation suit is governed by federal law, however, see *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 *Stevens v. Gateway*

---

**6.** Section 10(b) provides as follows:

[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [National Labor Relations] Board and the service of a copy thereof upon the person against whom such charge is made . . .
29 U.S.C. § 160(b).
Since we choose to adopt the 6-month limitations rule of Section 10(b), we need not decide whether plaintiff's suit against the Local is more analogous to one to vacate an arbitration award than to one for negligence or profession-

al malpractice. Compare *Hand v. International Chemical Workers Union,* 681 F.2d 1308 (11th Cir.1982); *Flowers v. Steel Workers Local 2602,* 671 F.2d 87 (2d Cir.1982), certiorari granted, —— U.S. ——, 103 S.Ct. 566, 74 L.Ed.2d 930 (1983), with *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982); *Delcostello v. International Brotherhood of Teamsters,* 679 F.2d 879 (4th Cir.1982), *affirming* 524 F.Supp. 721 (D.Md.1981), certiorari granted, —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599; *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349 (9th Cir.1981).

*Transportation Co.,* note 3 *supra,* and the Supreme Court expressly reserved judgment in *Mitchell* on whether a federal court must as a matter of federal law borrow a state limitations statute. Even assuming for the sake of argument that we must borrow state statutes in some situations, we think it plain that we may adopt a federal statute of limitations when, as here, the claim in question is at least as analogous to one expressly governed by the federal statute as to one arguably governed by a state statute.

Second, it may be argued that since a right of legal action for unfair representation was not inferred from the language of the National Labor Relations Act until well after its enactment, Congress could not have intended to apply the 6-month limitations rule in Section 10(b) to unfair representation claims. See *Mitchell,* 451 U.S. at 75–76, 101 S.Ct. at 1570–71 (Stevens, J. concurring and dissenting). Nor, however, could Congress have intended not to apply the 6-month rule, and we think it just as reasonable to suppose that had Congress thought about the matter, it would have extended the Section 10(b) limitations rule to unfair representation claims as that it would have required the adoption of state limitations rules. *Mitchell,* 451 U.S. at 68 n. 4, 101 S.Ct. at 1567 n. 4 (Stewart, J. concurring).

Third, and finally, it might be asserted that the elements Congress implicitly balanced when it fashioned the 6-month limitations rule of Section 10(b) are somehow different from the elements to be balanced in this case. The legislative history of Section 10(b) belies any such assertion. Congress adopted the 6-month rule of Section 10(b) in order to "bar litigation over past events 'after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have be-

come dim and confused,' H.R.Rep.No. 245, 80th Cong., 1st Sess., p. 40, and of course to stabilize existing bargaining relationships." *Local Lodge No. 1424 v. National Labor Relations Board,* 362 U.S. 411, 419, 80 S.Ct. 822, 828, 4 L.Ed.2d 832. These same concerns are no less at stake in the suit before us.

In sum, because a damage suit against a labor union is analogous to an unfair labor practice claim, because federal labor policy strongly favors prompt resolution of labor disputes, and because nothing suggests that adopting the 6-month period of Section 10(b) is at odds with Congressional intent, we will apply a 6-month limitations rule to Hall's suit against the Local. Since her claim was not commenced until approximately 10 months after the Local's decision not to arbitrate, we affirm the district court's dismissal of it as untimely.[7]

### III. *Plaintiff's Claim Against The International*

Plaintiff argues that the International was a party to the collective bargaining agreement with Consolidated, that the International held itself out as empowered to intervene on her behalf when it recommended that she delay legal action until it investigated matters, and that by refusing to intervene on her behalf after the Local refused to arbitrate her grievance, the International breached its duty of representing her fairly in the settlement of her grievance with Consolidated. Defendant International argues that it was not a party to the collective bargaining agreement, that it therefore owed Hall no duty to demand that Consolidated arbitrate her grievance, and that it neither authorized nor ratified the Local's decision not to arbitrate her grievance.

Plaintiff points to the appearance of the International's name in the preamble

---

7. Since we affirm the district court's dismissal of plaintiff's claim against the Local and Consolidated on statute of limitations grounds, we need not decide whether Hall exhausted her remedies before the Local and International prior to commencing this suit. See *Clayton v. International Union, UAW,* 451 U.S. 679, 101

S.Ct. 2088, 68 L.Ed.2d 538. We also need not decide whether uniformity requires that we apply to plaintiff's claim against Consolidated the same limitations statute we apply to her claim against the Local since both claims are barred under either Section 12(b) of the Illinois statute or Section 10(b) of the federal statute.

of the collective bargaining agreement as evidence that the International was a party to it. The language of the preamble is as follows:

Collective bargaining agreement made and entered this third day of January, 1980 by and between Consolidated Accounting System, Inc. (hereinafter the Company), and Printing and Graphic Arts Union No. 3, affiliated with the International Printing and Graphic Communications Union, AFL–CIO (hereinafter referred to as the Union).

We think it plain from the positions of the parenthetical titles "the Company" and "the Union" and from the appearance of the words "affiliated with" immediately preceding the reference to the International that the preamble refers only to two parties, not three or four as plaintiff would have it, and that the reference to the International, as to the AFL–CIO, is descriptive only. Cf. *Kit Manufacturing Co., Inc.,* 150 N.L.R.B. 662 (1964), enforced, 365 F.2d 829 (9th Cir.1966); *National Labor Relations Board v. Taorimina Company,* 207 F.2d 251 (5th Cir.1953), enforcing 94 N.L.R.B. 884 (1951).

 Plaintiff also alleges that when the Local signed the collective bargaining agreement it did so on behalf of the International. Plaintiff's briefs and affidavit are devoid of a speck of factual support for this allegation, and conclusory allegations are not sufficient to raise genuine issues of material fact. *Ashwell & Co., Inc. v. Transamerica Insurance Co.,* 407 F.2d 762 (7th Cir.1969).

 There remains only Hall's allegation that the International became obligated to represent Hall fairly when its president offered to investigate matters. Plaintiff offers no legal theory in support of this contention, and we are at a loss to imagine one. The Local had neither actual nor apparent authority to act as the International's agent. Cf. *Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 101 S.Ct. 410, 62 L.Ed.2d 394. Nothing the International said or did could possibly create the impression that the Local was acting on behalf of

the International. At best, the statement by the International's president suggests the availability of an internal union remedy before the International for conduct by the Local violative of its constitution and by-laws. The right of appeal to a national affiliate is entirely distinct from the right to be fairly represented by a national affiliate.

For the reasons above, we affirm the district court's orders.