Martha L. BROWN, Plaintiff-Appellee,

v.

CAPITOL AIR, INC., Defendant-Appellant.

No. 723, Docket 85–7860.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1986.

Decided Aug. 5, 1986.

Norman Leonard Cousins, New York City, for plaintiff-appellee.

Phillip D. Bostwick, Washington, D.C. (David J. Cynamon, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., of counsel), for defendant-appellant.

Before OAKES, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff Martha Brown brought an action in a New York state court on August 10, 1983, against Capitol Air, Inc. ("Capitol") alleging various causes of action arising out of her forcible expulsion from a Capitol flight. That case is apparently pending in state court. Ms. Brown commenced the instant case as a separate action in the same New York state court on May 17, 1984, alleging a number of additional legal claims based on the same underlying events. The instant action was then removed to the United States District Court for the Eastern District of New York. Chief Judge Weinstein granted summary judgment against Ms. Brown but declined to impose sanctions under Fed.R. Civ.P. 11. Ms. Brown has not appealed; Capitol has.

This appeal raises the question whether a defendant who uses removal to a federal court to bifurcate litigation that would be most economically resolved as a single proceeding may recover sanctions under Rule 11 for what are additional and essentially unnecessary proceedings resulting from the removal. We answer the question in the negative and affirm the decision of the district court.

Both the pending state case and the instant action arose from events occurring on April 10, 1983, on Capitol Flight 220, originating in Los Angeles and terminating in New York. According to a flight attendant's report written within a day after the flight, two women passengers became un-

ruly on the leg of the flight between Los Angeles and Chicago. The flight attendants discovered that the women were drinking alcohol other than that served by the airline, in violation of Section 121.575 of the FAA regulations, 14 C.F.R. § 121.575(a), and asked the women to put the bottles away. Bad weather forced a delay on the Chicago to New York leg, and the plane was diverted to Philadelphia for refueling. According to the flight attendant's report, the situation got worse, as the two women began singing songs about drugs and sex and shouting obscene language that offended other passengers. The flight personnel called the Philadelphia police, who took plaintiff and her sister into custody. Plaintiff was released within hours and returned home to New York by train.

Four days after the incident, plaintiff, a black woman, asked the Federal Aviation Administration ("FAA") Office of Civil Rights to investigate the incident, claiming that she was not one of the passengers creating the disturbance and did not even board Flight 220 until it reached Chicago. She attributed her removal from Flight 220 to racial discrimination. This complaint triggered investigations by the FAA and the U.S. Department of Transportation Office of Civil Rights. In response to those investigations, Capitol submitted the flight attendant's report and a written statement by the pilot. The FAA also received a passenger's statement that the women causing the disturbance were indeed those who were taken off the plane by the police.

The FAA concluded that Ms. Brown had violated two FAA regulations concerning interference with a crew member and the drinking of alcoholic beverages not served by the airline. By letter of December 20, 1983, the FAA informed Ms. Brown that she was subject to a maximum penalty of $1,000 for each violation but offered to settle its claim for $500. Eventually, the FAA referred the violations to the United States Attorney for the Eastern District of New York to bring an action to assess and collect a civil penalty under 49 U.S.C. § 1473(b)(1) (1982). Ms. Brown did not defend the action, and a default judgment was entered against her in the amount of $2,000 on June 18, 1985. Meanwhile, on November 21, 1983, the Office of Civil Rights informed Ms. Brown that its investigation revealed that race was not a factor in her expulsion from the Capitol flight.

On August 10, 1983, Ms. Brown filed the first complaint against Capitol in state court alleging breach of contract, humiliation, statutory violations, false imprisonment, abandonment, and slander. Although there was diversity of citizenship between the parties and a sufficient amount in controversy, Capitol answered the complaint and allowed the time for removal to federal court to pass. *See* 28 U.S.C. § 1446 (1982).

Plaintiff's second complaint in state court was served on Capitol on May 17, 1984. It alleged libel, slander, malicious prosecution, abuse of process, intentional infliction of emotional distress, and *prima facie* tort, and demanded $12 million in damages. The factual basis was again the events described above. Ms. Brown's counsel, for reasons that are said to concern a statute of limitations problem, chose to bring this second case as a separate action with a view to consolidation with the prior suit rather than simply to amend the earlier complaint. As a result, removal to the federal court of the present action was permissible, a step that Capitol, represented by new counsel, immediately took. Thereafter, Capitol moved in the instant case for summary judgment and for sanctions under Rule 11.

Chief Judge Weinstein granted the motion for summary judgment but denied the motion for sanctions. Only Capitol has appealed.

We dispose first of a preliminary issue argued by the parties. Capitol bases its claim for sanctions, *inter alia*, on the failure of plaintiff's counsel to make a "reasonable inquiry" into the factual and legal basis of the complaint before its filing as

required by Rule 11.[1] Plaintiff's counsel in turn argues that this requirement of Rule 11 has no applicability to complaints filed in state court.

Rule 11, of course, does not purport to authorize sanctions for actions taken in state courts. It does, however, apply to proceedings following removal, Fed.R. Civ.P. 81(c), see *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1956), and sanctions may be imposed in appropriate circumstances for post-removal proceedings in the federal court. Capitol thus also argues that it is· entitled to sanctions for the actions it had to take to dispose of this matter after removal.

We may assume *arguendo* that plaintiff's defense of her claim in federal court would justify sanctions under Rule 11, as not based on a reasonable belief that it was "well grounded in fact and [was] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." Fed.R.Civ.P. 11. Even on that assumption, however, we do not believe that Capitol is entitled to sanctions under the unique circumstances of this case. The present action added only variations on legal themes to the action already pending in the state court, and, when consolidated with the latter, would not have required substantial additional resources to litigate. By failing to remove the first case and then removing the second, Capitol bifurcated this essentially unitary claim and effectively increased the costs of this litigation for itself, its adversary, and the courts.

In light of these circumstances and the purposes of Rule 11, it would be counterproductive to allow Capitol to recover sanctions from plaintiff for the largely superfluous proceedings in the federal court. One purpose of that Rule is to bring about economies in the use of judicial resources. Imposition of sanctions in these circumstances would reward one who caused diseconomies. Capitol had a legal right to remove the second case but no right to profit from that act under Rule 11.

In so ruling, we in no sense suggest that defendants who remove litigation from state to federal courts are not entitled to protection under Rule 11. We hold only that, in the very unique circumstances of this case, where removal effectively bifurcated what should have been a single action and thereby increased costs for everyone, the purposes of Rule 11 would not be served by imposition of sanctions on the plaintiff.

Affirmed.

---

1. That Rule provides in pertinent part:

    Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction.
    Fed.R.Civ.P. 11.