**Patty L. PEFFLEY, Plaintiff,**

v.

**DURAKOOL, INC., d/b/a Hermaseal Co., Defendant.**

**No. S86–39.**

United States District Court, N.D. Indiana, South Bend Division.

Sept. 24, 1987.

David T. Stutsman, Elkhart, Ind., Lawrence J. Clifford, South Bend, Ind., for plaintiff.

Gregory L. Kelly and Kathleen K. Brickley, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion for summary judgment of defendant Durakool, Inc. Rule 56, Fed.R.Civ.P. For the reasons that follow, the court finds that the defendant's summary judgment motion should be granted, and that the defendant's motion for sanctions under Rule 11, Fed.R.Civ.P., should be denied.

### I. *Facts*

Durakool employed the plaintiff, Patty L. Peffley, from 1972 until her termination on January 27, 1984. At the time of her termination, Mrs. Peffley earned approximately $5.83 an hour and worked an average of forty hours per week. Mrs. Peffley was 49 years of age when her employment was terminated; she alleges that Durakool discharged her on the basis of her age. In support of this allegation, Mrs. Peffley alleges that Durakool hired a younger person to replace her and that Durakool's vice-president made an age-related comment to her after her discharge.

Durakool contends that Mrs. Peffley was discharged, not because of her age, but because her supervisor believed she was trying to take a vacation under the guise of medical leave. On January 23, 1984, Mrs. Peffley saw Dr. Knight for a thumb injury sustained at work in December, 1983. She called Durakool on January 23 to report that she would not be at work that day. Dr. Knight scheduled an appointment for her with Dr. Ellis, an orthopedic specialist, for January 25. Mrs. Peffley did not report to work on January 24 or 25; she does not recall whether she notified Durakool in advance of those absences.

After taking X-rays of Mrs. Peffley's thumb, Dr. Ellis told her not to use her thumb more than was necessary. Mrs. Peffley informed Dr. Ellis that she was scheduled to take a three-week vacation in Florida beginning Monday, January 30. After some discussion, Dr. Ellis wrote a

doctor's excuse recommending that Mrs. Peffley take three weeks off from work.

Mrs. Peffley did not report to work on January 26; she cannot recall whether she informed Durakool in advance of her absence. On Friday morning, January 27, Mrs. Peffley went to the Durakool plant to pick up her paycheck. She presented her foreman, Ken Ard, with the note from Dr. Ellis and told Mr. Ard that she was leaving for Florida that day to go fishing. The parties dispute the next events: Durakool contends that Mr. Ard told Mrs. Peffley that she could not use a medical leave of absence to take a vacation; Mrs. Peffley alleges that she did not understand why the two leaves of absence, medical and vacation, could not overlap. Mrs. Peffley further alleges that she told Mr. Ard to put her down for vacation leave beginning January 30.

After speaking to Mrs. Peffley, Mr. Ard prepared a payroll change notice to reflect Mrs. Peffley's termination, effective January 27. Mr. Ard believed that Mrs. Peffley had attempted to abuse the medical leave policy and that, in light of her prior record of absenteeism, her discharge was warranted. On January 31, after discussing the matter with John Howard, Durakool's vice-president, Mr. Ard mailed a termination notice to Mrs. Peffley's home address.

While the Peffleys were in Florida, their daughter was staying in their home. During her stay, the termination notice from Durakool arrived in the mail. During a telephone conversation with Mrs. Peffley in the week of January 30, her daughter informed Mrs. Peffley she had received a termination notice from Durakool, effective January 27, 1984.

Mrs. Peffley was a member of the United Paperworkers, International Union, AFL, CIO–CLC, Local 1056 ("the union"). Following her return from Florida on February 21, Mrs. Peffley filed a grievance regarding her discharge with the union steward at Durakool. Under the collective bargaining agreement between the union and Durakool, grievances were to be resolved under a four-step procedure. If the grievance was not settled through the four-step procedure, the union could refer the dispute to the Federal Mediation Service for arbitration. Mrs. Peffley's grievance was denied after the four-step procedure. Her fellow union members voted not to take the matter to arbitration. The collective bargaining agreement between Durakool and the union contained the following provisions:

Article IV, Section 3.F.

In the event the Union, or any employee fails to originate, handle and/or appeal the grievance from one step to the next in the grievance procedure within the time limits provided for in said grievance procedure, the grievance shall be considered settled on the basis of the last decision of the Company and not subject to further appeal or reconsideration and in such event said grievance shall be subject to no further action of any type or kind whatsoever by the Union....

\* \* \* \* \* \*

Article X, Section 6.

.... full reason for ... suspension or discharge shall be recorded and stated in writing to the Union.

\* \* \* \* \* \*

Causes for suspension or ultimate discharge are:

\* \* \* \* \* \*

K. Dishonesty.

(Collective Bargaining Agreement).

On August 9, 1984, Mrs. Peffley filed an age discrimination charge with the EEOC. Mrs. Peffley alleged that she had called John Howard, Durakool's vice-president, to ask for her job back. According to Mrs. Peffley, Mr. Howard stated that he was sorry she was getting old and could not work but that he did not want her back at Durakool. Mrs. Peffley further alleged that Durakool hired a younger person to replace her. The EEOC stopped processing Mrs. Peffley's charge when she informed them that she intended to file suit against Durakool.

On January 2, 1986, Mrs. Peffley filed suit against Durakool in the Elkhart Superior Court, Elkhart, Indiana. In her com-

plaint, Mrs. Peffley claimed that Durakool discharged her in violation of the ADEA, in violation of the collective bargaining agreement, and in violation of Indiana law on retaliatory discharge. Mrs. Peffley also claimed that Durakool owed her three weeks' vacation pay[1], three weeks' wages for medical leave, and three weeks' worth of disability insurance benefits. Finally, Mrs. Peffley alleged that Durakool defamed her in the termination notice they sent to her. Durakool removed the suit to this court, based on this court's jurisdiction over the ADEA claim, 29 U.S.C. §§ 216(b), 626(b), and this court's jurisdiction over suits for breach of collective bargaining agreements. 29 U.S.C. § 185.

## II. Standard of Review

In a summary judgment motion, the movant must first demonstrate, by way of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that (1) no genuine issues of material fact exist for trial, and (2) the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). If the motion's opponent would bear the burden of proof at trial on the matter that forms the basis of the summary judgment motion, the burden of proof shifts to the motions's opponent if the movant makes its initial showing, and the motion's opponent must come forth and produce affidavits, depositions, or other admissible documentation to show what facts are actually in dispute. *Celotex Corp. v. Catrett*, 477 U.S. at ——, 106 S.Ct. at 2548; *Klein v. Trustees of Indiana University*, 766 F.2d 275, 283 (7th Cir.1985). Summary judgment should be granted only if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260 (7th Cir.1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed. 2d 336 (1983); or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985); *Hall v. Printing and Graphics Arts Union*, 696 F.2d 494, 500 (7th Cir.1982). Any permissible reasonable inferences from the documentary evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.*, 773 F.2d 130 (7th Cir.1985).

The defendant's summary judgment motion must be addressed with these standards in mind.

## III. ADEA Claim

In its summary judgment motion, Durakool argues that Mrs. Peffley's claim under the Age Discrimination in Employment Act ("ADEA") is time-barred because she did not file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the claimed unlawful practice occurred, as required by 29 U.S.C. § 626(d)(1). Mrs. Peffley argues that Durakool's failure to post conspicuous notice informing its employees of their rights under the ADEA equitably tolled the statute of limitations. The parties have also advanced arguments concerning the merits of Mrs. Peffley's ADEA claim, but the court finds it unnecessary to address those argu-

---

**1.** Mrs. Peffley has since conceded her claim for vacation pay. She did not argue in response to Durakool's motion for summary judgment on the issue of vacation pay, and her counsel conceded that claim at a pretrial conference held on August 25, 1987.

ments because Durakool is entitled to summary judgment on the ADEA claim as a matter of law on timeliness grounds.

■ A claimant under the ADEA must file a charge with the EEOC within 180 days after the claimed unlawful employment practice occurred. 29 U.S.C. § 626(d)(1). Mrs. Peffley complains of discriminatory termination. In termination cases under the ADEA, the limitations period for filing with the EEOC runs from the time the employee was notified that he would be discharged rather than from the actual time of termination. *Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 504–505, 66 L.Ed.2d 431 (1980); *Anderson v. Illinois Tool Works*, 753 F.2d 622, 624 n. 2 (7th Cir.1985); *Heiar v. Crawford County*, 746 F.2d 1190 (7th Cir.1984), *cert. denied* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

■ Mrs. Peffley received notice of her termination during the week of January 30, 1984. During that week, Mrs. Peffley's daughter opened, read, and, in a telephone conversation, informed Mrs. Peffley of the termination notice from Durakool. Viewing the evidence most favorably to the plaintiff, Mrs. Peffley received actual notice of her termination on February 4, 1984, the last day of the week of January 30, 1984. Mrs. Peffley filed her age discrimination charge with the EEOC on August 9, 1984, one hundred eighty-seven days after she received notice of her termination. Consequently, under 29 U.S.C. § 626(d)(1), Mrs. Peffley's ADEA complaint filed in this court is untimely.

The United States Court of Appeals for the Seventh Circuit has interpreted the ADEA's 180–day filing period to be subject to equitable modification to effectuate the Act's remedial purposes. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir.1978); *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In *Kephart*, the Court held that an employer's failure to post a conspicuous notice of employees' ADEA rights equitably tolls the 180–day notice limitation of § 626(d). 581 F.2d at 1289. The *Kephart* court further

held that when an employer fails to post conspicuous notice, the 180–day period begins to run when the employee either retains an attorney or acquires actual knowledge of his ADEA rights. *Id.*

In *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), the Seventh Circuit applied the *Kephart* doctrine of equitable tolling in the context of a motion for summary judgment. In support of its summary judgment motion, the defendant employer in *Posey* submitted affidavits from a manager and its vice-president averring that the required notice of ADEA rights had been posted conspicuously and continuously in the employee lunch room. *Id.* The plaintiff employee submitted his own affidavit averring, in essence, that he checked the employee lunch room bulletin board daily and never saw or read any such posted notice. *Id.* The court held that the plaintiff employee's affidavit created no genuine issue of material fact concerning whether the employer had conspicuously posted the ADEA notice. *Id.* at 106. The court drew a distinction between an averment that the employee had never seen a notice and an averment that the notice was not in fact conspicuously posted. *Id.*

In support of its summary judgment motion, Durakool has submitted the affidavits of its secretary and two employees averring that the required ADEA notice was posted continuously and conspicuously next to the employee time clock. Mrs. Peffley's opposing affidavit avers not only that she never read or saw the required notice, but also that the notice itself was never posted. Thus framed, the issue of equitable tolling on the motion for summary judgment appears to present the other half of the close distinction drawn in *Posey*. One might distinguish this case from *Posey* on the rationale that an affidavit stating that a notice was never posted is sufficient to create a genuine issue of material fact concerning whether the notice was in fact posted. For the reasons that follow, however, the court concludes that no such distinction should be made.

■ A close reading of the *Posey* holding, coupled with careful consideration of the requirements of Rule 56, lead the court to conclude that Mrs. Peffley's affidavit is insufficient to create a genuine issue of material fact concerning Durakool's conspicuous posting of the required ADEA notice. In support of its holding, the *Posey* court reasoned that

> Rule 56 ... demands that [the plaintiff] show *specific* facts indicating that a genuine issue does indeed exist for trial.... Neither the district court nor this Court has an obligation to hypothesize or speculate about the various implications of [the plaintiff's] factual presentation. Unsupported by other evidence, [the plaintiff's] averment that he never saw an ADEA poster [at work] fails to go far enough to rebut [the defendant's] unambiguous affidavits.

*Id.* at 106. As Rule 56(e) requires that the non-moving party set forth specific facts to avoid summary judgment, so the *Posey* holding requires ADEA plaintiffs to advance more than a mere conclusory allegation that notice was never posted. Moreover, in other contexts, conclusory affidavits unsupported by specific facts normally are insufficient to create a genuine issue of material fact. *See, First Commodity Traders v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985); *Hall v. Printing & Graphic Arts Union*, 696 F.2d 494, 500 (7th Cir.1982).

■ In *Soderlund v. Ben Franklin*, 41 F.E.P. 1709 (N.D.Ill.1986) [Available on WESTLAW, DCT database], a district court confronted with this issue held that the plaintiff's conclusory statements that no ADEA notices were posted created no genuine issue of material fact. *Id.* at 1710. The *Soderlund* court stated that while other workers' affidavits, in addition to the plaintiff's, might suffice to create a genuine factual issue, the plaintiff's conclusory allegations that no notices were posted amounted to no more evidence than his failure to see and read them. *Id.* The *Soderlund* holding correctly interprets the thrust of *Posey;* a contrary reading would transform *Posey* into a mere technical requirement aimed at the wording of affidavits. Rule 56(e) addresses more than the mere wording of affidavits; it imposes on the non-moving party an affirmative obligation to set forth specific facts indicating that a triable issue of fact exists.

■ Mrs. Peffley's affidavit sets forth no specific facts apart from her statement that she never read or saw any ADEA notice posted. Rule 56(e), as interpreted by the Seventh Circuit in *Posey*, requires more. Accordingly, the defendant's motion for summary judgment on plaintiff Patty Peffley's ADEA claim should be granted.

### IV. *Section 301 of the LMRA*

■ Mrs. Peffley alleges that Durakool discharged her without just cause, in violation of a provision contained in the collective bargaining agreement between Durakool and the union. Mrs. Peffley also claims that Durakool discharged her in retaliation for her filing for workmen's compensation benefits. Under Indiana law, an employer may not discharge an employee because the employee seeks to collect workmen's compensation benefits. *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973).

Durakool argues that Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts Mrs. Peffley's claims for breach of the collective bargaining agreement and retaliatory discharge and bars Mrs. Peffley from enforcing those claims in an action in court. Because the union chose not to submit Mrs. Peffley's grievance to arbitration under the collective bargaining agreement, Durakool contends, she is barred from further action of any sort for breach of the collective bargaining agreement or retaliatory discharge.

### A. *Alleged Breach of the Collective Bargaining Agreement*

■ Federal substantive law governs suits based on a collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 655, 85 S.Ct. 614, 617–18, 13 L.Ed.2d 580 (1965); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Congress has specified

that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes...." 29 U.S.C. § 173(d). The Supreme Court has interpreted this congressional statement of policy as requiring courts to defer to the grievance procedures selected by the parties to a collective bargaining agreement. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Republic Steel v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). Although collective bargaining agreements often provide for binding arbitration as the ultimate method for resolution of employee grievances, this federal policy of deference also applies to contractual grievance procedures that provide dispute resolution methods other than binding arbitration. *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221 (7th Cir.1985).

 Under this federal labor policy of deference to contractual grievance procedures, an employee must exhaust the grievance procedures; further, the employee is barred from relitigating the issue in the courts. *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221, 1223 (7th Cir. 1985); *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414, 416 (5th Cir. 1966). The Supreme Court has created two exceptions to this general rule: (1) when the employer's conduct constitutes a repudiation of the contract procedures, and (2) when the union breaches its duty of fair representation by wrongfully refusing to process the employee's grievance. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

Mrs. Peffley submitted her grievance under the procedures provided in the collective bargaining agreement between the union and Durakool. Under that agreement, if the grievance is not settled through the first four stages of the process the union may elect to submit the dispute to arbitration. In Mrs. Peffley's case, the union chose not to pursue the matter further.

 The collective bargaining agreement between Durakool and the union further provided that:

[I]n the event the Union or any employee ... fails to appeal the grievance from one step to the next in the grievance procedure within the time limits provided for in said grievance procedure, the grievance shall be considered settled on the basis of the last decision of the Company and not subject to further appeal or reconsideration and in such event said grievance shall be subject to no further action of any type or kind whatsoever by the Union.

Collective Bargaining Agreement, Article IV, Section 3.F. Because the union chose not to submit Mrs. Peffley's claim to arbitration, this finality provision[2] effectively bars Mrs. Peffley's action in this court to enforce her rights under the "just cause" provision of the collective bargaining agreement.

 Mrs. Peffley argues that she should be allowed to pursue a judicial remedy despite the finality provisions because, under the exceptions recognized in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed. 2d 842 (1967), her remedies under the collective bargaining agreement are inadequate. She argues that Durakool repudiated the procedures under the collective bargaining agreement. In support of this argument, Mrs. Peffley asserts in paragraph 7 of her affidavit that Joyce Thurman, the union president, told her that Durakool did not intend to abide by the result of the collective bargaining agreement. Durakool moved to strike paragraph 7 of Mrs. Peffley's affidavit because it is inadmissible hearsay. Rule 56(e) requires that affidavits in support of or in opposition to a

2. The court notes that the quoted provision could be interpreted to bar only the union's access to a judicial forum. Because neither party has advanced such an argument, the court will address Durakool's motion for summary judgment upon the assumption that the quoted passage is a finality provision. *See Lazzara v. Esser*, 802 F.2d 260, 269 (7th Cir.1986) ("A trial judge may properly depend upon counsel to apprise her of the issues for decision. The judge is not obligated to search for other issues that may lurk in the pleadings.")

motion for summary judgment must set forth facts that would be admissible in evidence. *First National Bank of Clinton v. Insurance Co. of North America*, 606 F.2d 760, 766 (7th Cir.1979). Federal law governs the admissibility of evidence for purposes of deciding a summary judgment motion. *Utility Control v. Prince William Construction Co.*, 558 F.2d 716 (4th Cir.1977). Statements that constitute hearsay under Rule 801 of the Federal Rules of Evidence are entitled to no weight, *Pan-Islamic Trade Corp. v. Exxon*, 632 F.2d 539 (5th Cir.1980), *cert. denied* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *State Mut. Life Ins. Co. v. Deer Creek Park*, 612 F.2d 259 (6th Cir. 1979); *Rossi v. Trans World Airlines*, 507 F.2d 404 (9th Cir.1974), and the court must disregard the inadmissible portions of an affidavit and consider only the admissible portions in deciding the summary judgment motion. *Roberts v. Hochstetler*, 592 F.Supp. 703, 706 (N.D.Ind.1983).

■ Paragraph 7 of Mrs. Peffley's affidavit contains double hearsay: Mrs. Peffley (the affiant) states that Joyce Thurman (an out-of-court declarant) told Mrs. Peffley something that "the company" (presumably through an inidentified out-of-court declarant) told Mrs. Thurman. If offered to prove the truth of the matters asserted by "the company", or even if offered only to prove that "the company" made such statements, the evidence is hearsay, Fed. R.Ev. 801(c), and would be inadmissible at trial. Fed.R.Ev. 802. Because Mrs. Peffley's affidavit does not identify the company spokesman, the evidence would not be admissible as an admission of a party-opponent. *See* Fed.R.Ev. 801(d)(2)(C), (D).

■ Accordingly, the court grants Durakool's motion to strike paragraph 7 of Mrs. Peffley's affidavit. No genuine issue of material fact remains as to whether Durakool repudiated the agreed upon grievance procedures, and, therefore, the first exception articulated in *Vaca* does not apply.

Mrs. Peffley has not alleged that the union breached its duty of fair representation; thus, she does not argue that the second *Vaca* exception applies.[3] Accordingly, the general rule of judicial deference to the procedures contained in the applicable collective bargaining agreement applies. Durakool is entitled to judgment as a matter of law on Mrs. Peffley's claim that it discharged her without just cause in breach of the collective bargaining agreement.

### B. *Retaliatory Discharge*

■ Mrs. Peffley claims that Durakool discharged her before she filed a workmen's compensation claim under Indiana law in order to prevent her from pursuing those rights. She claims that this constitutes retaliatory discharge under Indiana law. However, the Seventh Circuit has held that Section 301 of the LMRA preempts a retaliatory discharge claim by a worker covered under a collective bargaining agreement with a "just cause" provision. *Lingle v. Norge Division of Magic Chef*, 823 F.2d 1031, 1051 (7th Cir.1987) (en banc); *Vantine v. Elkhart Brass Manufacturing Co.*, 762 F.2d 511, 517 (7th Cir. 1985). Federal substantive law governs Mrs. Peffley's claim of retaliatory discharge, and the federal labor policy of judicial deference to the exclusive and final remedies selected by the parties to the collective bargaining agreement applies. Because the union chose not to submit Mrs. Peffley's grievance to arbitration, the collective bargaining agreement's finality provision bars her retaliatory discharge claim. Accordingly, Durakool is entitled to summary judgment as a matter of law on Mrs. Peffley's retaliatory discharge claim.

### C. *Defamation*

■ Mrs. Peffley's defamation claim is also preempted by Section 301 of the

---

**3.** Even had Mrs. Peffley alleged that the union breached its duty of fair representation, Durakool still would be entitled to summary judgment because Mrs. Peffley failed to file suit within the six month limitations period applica- ble to an employee's action under Section 301 of the LMRA. *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

LMRA. She claims that Durakool defamed her in its termination letter to her. Under the analysis set forth in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and applied in *Lingle v. Norge Division of Magic Chef*, 823 F.2d 1031 (7th Cir.1987) (en banc), Mrs. Peffley's defamation claim is a state tort claim that is inextricably intertwined with the collective bargaining agreement because it implicates the same analysis of the facts as would an inquiry under the "just cause" provisions of the agreement. *See Lingle*, 823 F.2d at 1046. A court or a jury deciding Mrs. Peffley's defamation claim would have to conduct the same factual inquiry into Mrs. Peffley's discharge as that conducted under the grievance procedures.

Durakool claims that Mrs. Peffley was dishonest in her attempt to take a vacation under the guise of a medical leave, and argues that the truth of its statements to that effect are a complete defense to her defamation action. The truthfulness of the statement in Durakool's termination notice depends upon the interpretation of the term "dishonesty" as a ground for discharge under the collective bargaining agreement. Because resolution of this case under a state law defamation theory would require the definition and interpretation of a term of the collective bargaining agreement, federal labor law preempts the state rule, and Section 301 of the LMRA applies. *Allis-Chalmers v. Lueck*, 471 U.S. at 210, 105 S.Ct. at 1910–11; *Gregory v. Simon Bros.*, 640 F.Supp. 1252 (N.D.Ind. 1986).

This holding is of limited reach. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 220, 105 S.Ct. at 1916 ("[Not] every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by § 301."). The allegedly defamatory statement at issue here was contained in a notice from an employer informing the plaintiff of her discharge, an event specifically covered by the collective bargaining agreement. Moreover, the agreement obligated Durakool to send such notice in writing to the union. Although the plaintiff did not rely on this publication in her complaint, the required publication to the union under the agreement would satisfy an element of state defamation law. This potential conflict between the requirements of the collective bargaining agreement and the elements of state defamation supports preemption of this particular defamation claim. The court expresses no opinion as to whether, in other circumstances, other employees' defamation claims against an employer should be preempted. The scope of Section 301 preemption must be determined on a case-by-case basis. *Id.*

### D. *Medical Leave and Insurance Benefits*

Section 301 of the LMRA also preempts Mrs. Peffley's claims for three weeks' wages for medical leave and the insurance benefits she would have received if still employed at Durakool. Both of these claims depend upon an interpretation of the collective bargaining agreement. For the reasons set forth above in the analysis of Mrs. Peffley's claims for breach of the collective bargaining agreement, Mrs. Peffley's claims for medical leave and insurance benefits are barred.

### V. *Rule 11*

 In addition to its motion for summary judgment, Durakool moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Durakool argues that Mrs. Peffley's complaint includes groundless claims and that her attorney did not conduct the pre-filing inquiry into the facts and law required by Rule 11. Because Mrs. Peffley's complaint was originally filed in state court in Indiana, Durakool's motion for sanctions under Rule 11 must be denied. Rule 11 does not apply to pleadings filed in state court in a case later removed to federal court. *See Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir.1987); *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir.1987); *Brown v. Capitol Air, Inc.*, 797 F.2d 106, 108 (2d Cir.1986). Rule 11 applies to papers filed in federal court after a case is removed, *see* Fed.R.Civ.P. 81(c);

*Brown v. Capitol Air. Inc.*, 797 F.2d at 108, but Durakool's Rule 11 motion is directed at the original complaint filed in state court, rather than to the papers Mrs. Peffley has filed in this court. Rule 11 does not require the updating of papers that were not subject to sanctions when filed. *Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451, 545 (7th Cir. 1987); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986). Accordingly, Durakool's Rule 11 motion is denied.

## VI. *Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED, and the defendant's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure is DENIED.

SO ORDERED.